UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW VISION HOME HEALTH CARE, INC., ET AL.,

    Plaintiffs,

v.                                                                                       Case No.: 16-13173

ANTHEM, INC., ET AL.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR RECONSIDERATION (Doc. # 32) and
GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. #20)**

This matter is before the Court on Defendants' Motion for Reconsideration. The Court finds there was a palpable defect by which it and the parties were misled in issuing its first Order. By addressing it, a different outcome is warranted. Loc. Civ. R. 701(h)(3). Accordingly, the Court GRANTS Defendant's Motion for Reconsideration and GRANTS Defendants' Motion to Dismiss. This revised order addresses the issues raised by both defense motions.

**I.    STATEMENT OF FACTS**

New Vision Home Health Care, Inc., and Saleem Shakoor, the owner of New Vision (collectively, "New Vision"), filed suit against National Government, Inc., TrustSolutions, LLC, and Anthem, Inc. (collectively "Defendants"). New Vision's Second Amended Complaint ("SAC") contains eight claims: Count I – writ of mandamus for enforcement of the ALJ's September 4, 2013 decision (Contractors Within Course and Scope); Count II – writ of mandamus for enforcement of the ALJ's September 4, 2013

1

decision (Contractors Outside of Course and Scope and Failed to Exercise Due Care); Count III – negligence; Count IV – gross negligence; Count V – tortious interference with business relationships and expectancies; Count VI – violation of right to procedural due process; Count VII – declaratory judgment; and, Count VIII – injunction.

Defendants are government contractors for the Medicare program administered by the U.S. Department of Health and Human Services ("HHS"). New Vision submits Medicare claims to Defendants; they determine how much Medicare must pay New Vision for home health care services.

In 2007, Defendants initiated an audit of New Vision's Medicare claims for dates of service from May 8, 2003 through October 3, 2006. Defendants paid these disputed claims, from January 1, 2004 to December 10, 2006. Subsequently – through an audit sample – Defendants concluded that it overpaid New Vision $672,493.57 for claims for dates of service May 8, 2003 through October 6, 2006. Defendants then used a statistical extrapolation formula to calculate an estimated total overpayment to New Vision of $4,155,239.00 ("Disputed Amount") for that period.

In its Second Amended Complaint, New Vision says from October 2010 to the present, Defendants have not paid any claims New Vision has submitted, and that Defendants have withheld payments in order to recoup the Disputed Amount. (SAC ¶ 42 and 43). However, in papers filed in connection with Defendants' motions, New Vision says Defendants have withheld payments since 2006 (Doc. # 36; Pg ID 1145). For purposes of this Opinion, the Court will use the 2006 date.

In 2008, New Vision filed a claim through the Medicare Appeal Process over the Disputed Amount for 2003-2006. The Administrative Law Judge ("ALJ") ruled in its

favor. Defendants appealed the decision through the Medicare Appeals Council ("MAC"). The MAC remanded for a new ALJ hearing. On June 7, 2012, the ALJ conducted a hearing. New Vision presented arguments contesting the validity of the methodology the Defendants used to determine the estimated overpayment. It also presented reports from a statistical expert who analyzed Defendants' data and methodology. Defendants' evidence included medical records and an analysis of each medical claim submitted by New Vision between 2003 and 2006.

In his decision, the ALJ set forth the issue before him: "whether New Vision received and retained the total overpayment amount identified by [Defendants] … , and if so, whether [New Vision] is liable for return of the amount the [Defendants] calculated by extrapolation based upon its findings from its medical reviews of the claims in a statistical sample it had drawn." [Doc. 18-1; Pg ID 451]. To resolve this issue, the ALJ went through each of the 228 claims at issue and listed the amount of overpayment amount, if any, for that claim.

The ALJ entered a decision on September 4, 2013 that was partially favorable to New Vision; instead of being required to pay the entire Disputed Amount, the ALJ concluded that New Vision was overpaid only $35,872.28; this is the amount New Vision had to return to Defendants.

The ALJ stated these conclusions of law:
1. Some of the claims New Vision submitted to Defendants met the Medicare coverage criteria.
2. The reimbursements Defendants made for those claims to New Visions were appropriate and did not constitute overpayments.

3

3. Other home care services New Vision provided did not meet Medicare coverage criteria and/or condition for payment, and New Vision was overpaid for those claims.

4. The statistical sampling and methodology Defendants used to calculate the overpayment had numerous defects, which diminished the reliability and probative value of the evidence.

5. Because the sample was not valid, the resulting amount of the overpayment, calculated by extrapolation for the universe of claims, was not valid.

6. The overpayment amount subject to recovery was limited to the actual overpayment amounts based upon the ALJ's dispositions after conducting individual reviews of the medical records related to the episode claims in the sample and the claim lines there.

[Doc. #18-1; Pg ID 739].

The ALJ made no findings of fact or conclusions of law pertaining to the amounts Defendant withheld after 2006. Nor were there findings concerning the claims made by New Vision in Counts III-VIII.

The decision ended with this order:

"The Medicare contractors are hereby DIRECTED to process the claims and claim lines at issue in accordance with this decision. Any amounts recouped or otherwise recovered from the Provider based upon the invalid overpayment demands herein shall be returned to the Appellant."

[Doc. #18-1; Pg ID 740].

This order required Defendants to return to New Vision any amounts it had "recouped" from New Vision based on the Disputed Amount.

Neither party appealed the ALJ's decision to the MAC.

After the ALJ decision issued, Defendants sent New Vision a letter demanding $41,676.65. Defendants calculated that amount by reducing the $35,872.28 to $29,989.11 (reflecting New Vision earlier payments), and adding $11,686.54 interest. New Vision has not paid anything in response to Defendants' letter.

Since 2006, New Vision says it has not received any reimbursements for services from Defendants. New Vision claims Defendants did not pay reimbursements on new claims New Vision submitted, because Defendants were still attempting to collect on the Disputed Amount, most of which the ALJ said New Vision did not owe. New Vision relies on the ALJ's language in his one paragraph order to argue that the ALJ directed Defendants to pay New Vision amounts they withheld beginning in 2006.

On the other hand, Defendants say they did not recoup or recover any amount from New Vision post 2006 that had anything to do with the Disputed Amount. And, Defendants say they still have not received the $41,675.65 they demanded in 2013.

The Court finds:

1. New Vision cannot seek a writ of mandamus with respect to Counts I and II; it failed to exhaust administrative remedies on its lawsuit allegations that the amounts Defendants withheld beginning in

5

2006 were related to 2003-2006 claims and were intended to collect on the Disputed Amount;

2. The ALJ did not impose a clear nondiscretionary duty on Defendants to pay New Vision funds that it withheld beginning in 2006; and

3. New Vision failed to exhaust administrative remedies on claims set forth in Counts III-VIII.

## II. STANDARD OF REVIEW

### a. Motion to Dismiss 12(b)(1)

The Defendants move to dismiss all counts of New Vision's Second Amended Complaint, pursuant to Rules 12(b)(1). They say the Court lacks subject matter jurisdiction because New Vision failed to exhaust administrative remedies for claims arising under the Medicare Act, before filing suit; exhaustion is required for any civil action brought under 42 U.S.C. § 405(2).

"A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 194 (2d ed.1990). The Plaintiff bears the burden to prove jurisdiction. See generally *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134–35 (6th Cir.1996); see also *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986). "When considering a motion to dismiss for lack of subject matter jurisdiction, this Court may look beyond jurisdictional allegations in the complaint and the Court may consider whatever evidence the parties submit." *Fairport Int'l. Exploration, Inc. v. Shipwrecked Vessel Known as THE CAPTAIN*

6

*LAWRENCE*, 105 F.3d 1078, 1081 (6th Cir.1997), vacated on other grounds. 523 U.S. 1091, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998).

Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The jurisdiction conferred on federal courts by this statute is commonly referred to as "federal question" jurisdiction.

In cases such as this – where there is a challenge to the allocation of costs under Medicare – Congress prescribed a specific and exclusive method for judicial review of disputes arising under the Medicare program. See *Michigan Ass'n of Homes and Services For Aging v. Shalala*, 127 F.3d 496, 497 (6th Cir.1997); *Michigan Ass'n of Indep. Clinical Labs. v. Shalala*, 52 F.3d 1340, 1344–46 (6th Cir.1994). In particular, Congress limited federal court jurisdiction by expressly incorporating 42 U.S.C. § 405(h) of the Social Security Act into the Medicare Act. See 42 U.S.C. § 1395ii. This section provides: "No finding of fact or decision of the ... [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the ... [Secretary], or any officer or employee thereof shall be brought under Section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

b. Administrative Process

Before federal courts can exercise subject matter jurisdiction over Medicare claims, a plaintiff must fully exhaust administrative remedies and obtain a final decision from HHS. See 42 U.S.C. § 1395ff(b)(1)(A) (limiting judicial review to reconsideration of the Secretary's "final decision," reached at the conclusion of the administrative review

7

process); see also *Weinberger v. Salfi*, 422 U.S. 749, 764-766 (1975) (holding a "final decision" is "central to the requisite grant of ... jurisdiction" and therefore is a "statutorily specified jurisdictional prerequisite" to suit).

A plaintiff must follow a five-step process to fully exhaust administrative remedies: (1) After a party receives a denial of its claim, the first level of appeal is invoked by requesting a redetermination by the fiscal intermediary carriers. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940; (2) A party who is not satisfied with the redetermination can seek reconsideration by a Qualified Independent Contractor. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.960; (3) A party not satisfied with the decision of the Qualified Independent Contractor may request a hearing before an Administrative Law Judge. The ALJ conducts a hearing and issues a decision. The ALJ's decision is final and binding on all parties unless a party requests further review by the MAC within sixty days of the ALJ's decision; 42 C.F.R. §§ 405.1000; (4) If a party requests review by the MAC, the MAC will review the case and issue a final agency decision; 42 U.S.C. § 1395ff(d)(2); and (5) any party may file a civil suit in federal district court once the Secretary of HHS renders a final decision. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1002, 405.1006, 405.1014(b).

    c.  Writ of Mandamus

To seek a writ of mandamus New Vision must show it "has exhausted all other avenues of relief" and the Defendants owe New Vision "a clear nondiscretionary duty." *BP Care, Inc. v. Thompson*, 398 F.3d 503, 515 (6th Cir. 2005) citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

## III. DISCUSSION

### A. COUNTS I AND II

#### 1. New Vision did not fully exhaust administrative remedies.

New Vision seeks a writ of mandamus under 28 U.S.C. §1361 to enforce the ALJ's 2013 decision, which neither party appealed to the MAC.

Defendants first argue that the Court does not have subject matter jurisdiction over Counts I and II because New Vision failed to exhaust administrative remedies when it did not appeal the ALJ's 2013 decision. New Vision argues it had no obligation to appeal what it calls a decision in its favor and for which it only seeks enforcement. But, what is the decision that New Vision wants enforced? Certainly it is not the decision that it owes Defendants $35,872.28. Instead, New Vision wants this Court to order Defendants to pay New Vision amounts withheld beginning in 2006 because New Vision says this is what the ALJ ordered Defendants to do. New Vision says Defendants are still trying to recover the Disputed Amount through these withholdings.

Defendants say there is no final decision from the MAC that requires them to pay New Vision withholdings beginning in 2006. Further, Defendants say these withholdings had nothing to do with the 2003 through 2006 Disputed Amount.

New Vision's argument is without merit. There were no findings of fact or conclusions of law that pertain to the funds Defendants withheld from New Vision beginning in 2006, nor was there a finding that Defendants withheld funds beginning in 2006 to continue to collect on the Disputed Amount. Furthermore, the ALJ made no finding that Defendants had to pay New Vision a specific amount (or a finding that there was *any* amount).

Since neither party requested review by the MAC, and since the MAC never issued a final decision on whether Defendants withheld funds starting in 2006 to collect on the Disputed Amount, neither party can take advantage of the last step in the statutorily mandated process, which is to file a claim in federal district court.

New Vision relies on *Wolcott v. Sebelius*, 635 F.3d 757 (5th Cir. 2011). In *Wolcott*, the ALJ found that the plaintiff was entitled to Medicare payments for services rendered. The ALJ ordered defendants to process plaintiff's claims. The defendants did not pay the plaintiff for services rendered nor did they process new claims. The plaintiff, a health care provider, sued defendants, the Secretary of HHS and a Medicare carrier, asserting five claims for mandamus because the defendants failed to process and pay claims, only some of which were successfully appealed at the administrative level. The defendants filed a motion to dismiss for lack of subject matter jurisdiction, claiming the plaintiff did not exhaust administrative remedies as required by 42 U.S.C. §405.

On appeal, the Fifth Circuit found that the ALJ's decisions favorable to the plaintiff's claims were final because the "plaintiff does not seek a redetermination of administrative decisions concerning its right to benefits, but rather the enforcement of these administrative decisions." *Wolcott*, 635 F.3d 757, 764.

First and foremost, the Court in *Wolcott* only asserted mandamus jurisdiction over claims in which it found defendants owed a "clear non-discretionary duty to act" after a "fully favorable" ALJ decision. *Wolcott* at 768. As the Court discusses below, Defendants here do not have a clear nondiscretionary duty to pay New Vision anything. Additionally, the Sixth Circuit rejected the *Wolcott* rationale several years before the *Wolcott* decision, in *BP Care*, 398 F.3d 503, 514-15 (6th Cir. 2005).

New Vision also relies on *Pritchett v. Comm'r of Soc. Sec.*, 2005 U.S. Dist. LEXIS 46965 (E.D. Mich. 2005). In *Pritchett*, the plaintiff sought enforcement of the Social Security Appeals Council's decision to reinstate her benefits. The Court found that mandamus jurisdiction was not precluded as a matter of law by 42 U.S.C. § 405(g), when a plaintiff obtains favorable ALJ and Appeals Council's decisions, and a defendant has a clear obligation to pay back benefits. The Court stated: "the [Social Security] Act does not preclude the exercise of mandamus jurisdiction," finding that "the actions of the Secretary of Health and Human Services challenged . . . constitute such a complete abnegation [*sic*] of the Secretary's statutory responsibilities that issuance of the writ is warranted." *Pritchett,* 2005 U.S. Dist. LEXIS 46965, op. at 12, quoting *Ganem v. Heckler*, 746 F.2d 844, 845-846 (D.C. Cir. 1984).

*Pritchett* is not on point. The plaintiff in *Pritchett* did exhaust administrative remedies through the MAC; the MAC rendered a final agency decision, which gave the plaintiff authority to file a claim in federal district court. In contrast, New Vision has not exhausted administrative remedies.

Defendants rely on *BP Care, Inc. v. Thompson* to argue that Sixth Circuit precedent disallows mandamus jurisdiction when a party has not met exhaustion requirements.

In *BP Care*, the plaintiff "contested the Department of Health and Human Services' policy of imposing successor liability for money penalties incurred because of a violation of a Medicare provider agreement." *BP Care, Inc.*, *398* F.3d at 506. The successor owner abandoned the administrative process which ended when the ALJ dismissed the previous owner's challenge without a hearing. The successor filed suit in

federal court claiming that the ALJ's dismissal without a hearing "removed any available administrative remedies." *Id.* at 506.

The Sixth Circuit held that the plaintiff failed to exhaust administrative remedies, therefore barring mandamus jurisdiction; it concluded that the successor owner had failed to complete the administrative process and failed to exhaust "all other avenues of relief." *Id.* at 514-15.

As the statutes and case law make clear, a party seeking mandamus relief must first demonstrate exhaustion. Neither the ALJ nor MAC rendered a final agency decision on whether Defendants withheld funds beginning in 2006 to collect on the Disputed Amount, and whether Defendants were required to reimburse New Vision.

Because the Court finds New Vision did not fully exhaust administrative remedies for Counts I and II, it does not meet the first requirement for a writ of mandamus.

### 2. **Defendants do not owe New Vision a clear nondiscretionary duty.**

The ALJ never concluded that Defendants had a duty to pay New Vision a specific amount of money. Defendants rely on *Maczko v. Joyce*, 814 F.2d 308 (6th Cir. 1987) to argue Sixth Circuit precedent dictates that mandamus jurisdiction is not proper because New Vision did not meet the clear duty requirement for mandamus relief.

In *Maczko*, the plaintiff sought enforcement of an Equal Employment Opportunity Commission ("EEOC") decision in her favor. *Maczko*, 814 F.2d at 309. The Sixth Circuit held that even though the plaintiff fully exhausted administrative remedies, the district court lacked subject matter jurisdiction and the plaintiff was not entitled to mandamus

relief, because the EEOC did not clearly state what relief the defendant owed the plaintiff. *Id.* at 310-11.

The EEOC ordered: "the Complainant be reinstated with reasonable accommodation; be awarded back pay, seniority and benefits that may have accrued since the effective date of the denial of the Complainant's request for light duty deducting any duplicative award the Complainant may have received prior to the issuance of this decision." *Id.* at 309.

The Sixth Circuit reasoned that the terms of the EEOC order were not "readily ascertainable" because the parties disagreed over its meaning, and did not seek clarification from the EEOC. *Id.* In addition, the EEOC did not order the defendants to pay a specific amount to the plaintiffs for back pay.

*Maczko* is on point. New Vision and Defendants dispute the meaning of the ALJ's order, and the ALJ did not issue a decision that made it clear to the Defendants that they have a clear, nondiscretionary duty to reimburse New Vision for monies recouped beginning in 2006.

New Vision fails to meet the second requirement for a writ of mandamus: it does not demonstrate that Defendants had a clear, nondiscretionary duty to pay New Vision for amounts withheld beginning in 2006.

In sum, the Court lacks subject matter jurisdiction over Counts I and II.

**B. COUNTS III THROUGH VIII**

      **1. New Vision did not fully exhaust administrative remedies.**

In Counts III through VIII, New Vision seeks compensatory and consequential damages based on negligence, gross negligence, tortious interference with business

relationships, and due process violations. It also seeks declaratory and injunctive relief. New Vision argues it presented evidence to the ALJ of the Defendants' negligence, lack of due care, and violations of New Vision's due process rights, and it says the ALJ commented on Defendants' violations in his decision. Defendants argue that New Vision did not raise state law tort claims during the administrative process. Hence, Defendants argue that the Court does not have subject matter jurisdiction over these counts because New Vision failed to exhaust administrative remedies. The Court agrees.

For these claims, New Vision must show that it fully exhausted administrative remedies by following the five-step process described above. To enforce at step five, New Vision must seek enforcement of a final decision. See 42 U.S.C. § 1395ff(b)(1)(A).

The ALJ's final decision in 2013 only upheld New Vision's position that it had not been overpaid over four million dollars for its claims from May 8, 2003, through October 3, 2006. This was the only issue before the ALJ: "whether New Vision received and retained the total overpayment amount identified by [Defendants]…, and if so, whether [New Vision] is liable for return of the amount the [Defendants] calculated by extrapolation based upon its findings from its medical reviews of the claims in a statistical sample it had drawn." [Doc. 18-1; Pg ID 451].

The ALJ final decision was not based on negligence, gross negligence, tortious interference with business relationships, or due process violations.

New Vision argues several comments in the ALJ's findings show he found the Defendants lacked due care and they violated New Vision's right to due process of law. These comments included:

> "TrustSolutions' letter <u>failed to include</u> at least five of the mandatory elements. . . . TrustSolutions <u>failed to comply</u> with the above MPIM

> requirements and <u>exhibited disregard</u> for the CMS instructions to auditors."

(Dkt. 18-1, ALJ Decision, PgID 705. Emphasis added.)

> TrustSolutions <u>did not use care</u> in defining the sampling unit that served as the basis for its statistical sampling.

(Dkt. 18-1, ALJ Decision, PgID 708. Emphasis added.)

> [T]he PSC <u>did not demonstrate even substantial compliance</u> with the instructions set forth in chapter 3 of the MPIM.

(Dkt. 18-1, ALJ Decision, PgID 716. Emphasis added.)

> As with most rights, the right to recover Medicare overpayment is not without responsibilities. <u>Those duties attendant to the right to recover overpayments, especially the necessity of protection of due process, have not been faithfully executed.</u>

(Dkt. 18-1, ALJ Decision, PgID 729. Emphasis added.)

The comments, at best, were dicta, and not part of or the basis for the final decision. New Vision did not direct the Court to any part of the ALJ's findings of fact or conclusions of law that addressed negligence, gross negligence, tortious interference with business relationships, declaratory or injunctive relief. The ALJ did not render a final decision or order specific to the claims in Counts III-VIII.

Because New Vision did not fully exhaust administrative remedies for Counts III-VIII inasmuch as it did not follow the five-step process set forth in 42 U.S.C. § 1395ff, the Court lacks subject matter jurisdiction over Counts III-VIII.

## IV. CONCLUSION

The Court **GRANTS** Defendant's Motion for Reconsideration and **GRANTS** Defendants' Motion to Dismiss Counts I-VIII.

15

**IT IS ORDERED.**

                                            /s/ Victoria A. Roberts
                                            Victoria A. Roberts
                                            United States District Judge

Dated: 8/28/17